NO._____

---

## *IN THE UNITED STATES DISTRICT COURT*
## *FOR THE WESTERN DISTRICT OF OKLAHOMA*

---

KEITH EARL ROBINSON

*Petitioner,*



FEB 3 2020

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

v.

JEORLD BRAGGS (WARDEN)
*Respondent.*

---

Oral Argument Requested
Evidentiary Hearing Requested

---

**BRIEF IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS**

---

Keith Earl Robinson
LCC
P.O. Box 260
Lexington, OK. 73051

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................ iii

TABLE OF CONTENTS.............................................................. iii

JURISDICTION........................................................................ iv

STATEMENT OF COMPLIANCE............................................... v

PRELIMINARY STATEMENT..................................................... v

STATEMENT OF THE CASE....................................................... v

STATEMENT OF THE FACTS..................................................... vi

STANDARD OF REVIEW ......................................................... x

I. INSUFFICIENT EVIDENCE..................................................... 1

II. JUDGE'S DEPARTURE FROM ROLE AS NEUTRAL JURIST........................... 5

III. TRIAL COURT'S FAILURE TO GIVE
     LESSER-INCLUDED INSTRUCTION................................... 10

IV. INEFFECTIVE ASSISTANCE OF COUNSEL....................................... 15

V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.............................. 21

## TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Arizona v. Fulminante*, 499 U.S. 279, 311 (1991) .................................................... 5, 9

*Beck v. Alabama*, 447 U.S. 625 (1980) ...................................................... 12, 20

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................... 1, 4

*Keeble v. U.S.*, 412 U.S. 205 (1973) ...................................................... 10, 12, 20

*Mathews v. U.S.*, 485 U.S. 58, 63 (1988) ................................................... 14

*Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) .......................................... 17

*Simmons v. U.S.*, 390 U.S. 377, 385 (1968) ................................................ 24

*Smith v. Robbins*, 528, U.S. 259 (2000) .................................................. 21, 25

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................................... 15, 17, 21

**U.S. Court of Appeals Tenth Circuit Cases**

*Capps v. Sullivan*, 921 F.2d 260, 262-263 (10th Cir. 1990) ............................... 19

*Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2005) ................................. 22

*U.S. v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983) ....................................... 17

*U.S. v. Zimmerman*, 943 F.2d 1204, 1214 (10th. Cir. 1991) ................................ 19

**Oklahoma State Cases**

*Boyd v. State*, 1977 OK CR 322, ¶ 9, 572 P.2d 276, 279 .................................. 2

*Dixon v. State*, 545 P.2d 1262, 1264 (Okl.Cr.1976) ...................................... 10

*Grissom v. State*, 253 P.3d 969, 982 (Okl.Cr.2011) ...................................... 13

*Hall v. State*, 316 P.2d 620, 621 (Okl.Cr.1957) ......................................... 18

*Heinrich v. State,* 1971 OK CR 106, ¶ 9, 482 P.2d 629, 630-631 ......................... 3

*Lopez v. State,* 1986 OK CR 63, ¶ 6, 718 P.2d 369, 372 .................................. 4

*Matter of J.E.S.*, 1978 OK CR 111, ¶ 7, 585 P.2d 382, 384 ............................... 3

*Rowland v. State,* 1991 OK CR 94, 7, 817 P.2d 263, 265-266 .............................. 2

*Salazar v. State*, 1976 OK CR 190, ¶ 10, 554 P.2d 26, 28 ................................ 3

*Williams v. State*, 658 P.2d 499, 500 (Okl.Cr.1983) ..................................... 11

**Oklahoma State Statutes**

21 § 1438(B) ............................................................................................ 11

21 § 1438(B) (2011) ............................................................................. 4, 20

21 § 1701 (2011) ....................................................................................... 2

21 §1431(2011) ...................................................................................... 11

21 §1438(B)(2011) .................................................................................. 11

21 §13.1 ................................................................................................... 20

21 § 1431 (2011) ....................................................................................... 1

21 § 51.1 ................................................................................................... 20

**U.S. Constitutional Provisions**

Amendment 14 ................................................................................. passim

Amendment 6 ......................................................................................... 21

Amendment 5 ........................................................................................... 1

**Federal Statutes**

28 U.S. §2254(d) ............................................................................. passim

## JURISDICTION

Appellant invokes the jurisdiction of the United States District Court for the Western District of Oklahoma pursuant to timely file petition for a writ of *Habeas Corpus under Title 28, United States Code,* §2241 and 2254. This court has jurisdiction over this habeas corpus petition because Petitioner is in the custody of the State of Oklahoma in violation of federal laws and the Constitution of the United States. (See 28, U.S.C. §2241 (c)(3).) All claims in this petition have been exhausted in state court as required by 28 U.S.C. §2254. There are no pending appeals in either state or federal court.

## STATEMENT OF COMPLIANCE

This brief is written in Times New Roman 13 font and margined 1 inch on all sides in compliance with LCvR5.2 and 7.1. The 30 page limit has not been exceeded and is 25 pages (excluding pages with signatures)

## PRELIMINARY STATEMENTS

Mr. Robinson was the Defendant in the Washington County District Court and will be referred to as "Petitioner". Transcript pages are referred to by the day and page on which they can be found, i.e. (Tr.I. 32-33). The original record will be referred to as O.R.

## STATEMENT OF THE CASE

Mr. Robinson was charged by information in Washington County District Court Case No. CF-2013-280 with Count 1, Burglary in the First Degree, in violation of Oklahoma Statutes title 21 § 1431 (2011), after former conviction of two or more felonies. (O.R. 1-3, 20-21) Preliminary hearing of the matter was conducted on October 1, 2013 before Special Judge John M. Gerkin (who was later removed from the bench in the U.S. Northern District Court Case No. 19-cv-234-GKF-FHM for violating the U.S. Constitutional rights of defendants). The prosecution was represented at the hearing by Mr. Will Drake, ADA. Mr. Robinson was represented by Jim Conaster. Mr. Robinson was bound over for trial (O.R. 16; P.Tr.II. 16)

A two-stage jury trial was held January 27-28, 2014 with Judge Curtis L. DeLapp (Later removed from office for gross neglect and oppression of office). The parties were the same as preliminary. At the conclusion of the first stage of the trial, the jury found Mr. Robinson guilty of the offense charged. In the second stage, the jury found Mr. Robinson guilty after two or more prior convictions. The Jury assessed punishment of 23 years and a $500.00 fine.

On March 5, 2014 Mr. Robinson was sentenced and given the punishment recommended by the jury.

## STATEMENT OF FACTS

Renee White, an adult, lived with her parents Molly and Roscoe White at 1028 South Oak Avenue in Bartlesville, Oklahoma (Tr.I. 195-196). On June 27, 2013, Mr. White drove his wife to work and then went to visit a friend, leaving Ms. White home alone (Tr.I. 196). Ms. White testified that she was in her room putting away the laundry she had just taken out of the dryer when, at approximately 12:40 p.m., she heard a noise at the back of the house in the area of the utility room and back door. (Tr.I. 197, 199). Ms. White stated "It was a very loud noise, a banging, and it was so loud it shook the house" (Tr.I.198). Ms. White testified that when she heard the noise a third tie she realized someone was trying to get in the back door and quickly made her way in that direction (Tr.I.198).

Ms. White testified that when she got to the back door area, she came face to face with a man who was "[a] couple of feet" inside the house. (Tr.I.199, 201). She testified that he seemed stunned and just surprised to see her as she was surprised to see him (Tr.I.201). She screamed "You better get out of this room now, you better get out of here,". Ms. White testified that it was like he didn't understand (Tr.I.200-201). The man then turned around and ran out through the door in which he came, down the alley behind the house towards a cemetery to the south (Tr.I. 201-203, 281-219).

Ms. White testified she stood face-to-face with the man for nearly twenty seconds at an approximate distance of four feet (Tr.I.209-210). She described the man as being about five feet, eight inches tall with a slender build, "white maybe black, half black or part black based on his hair" which was "about an inch thick, kind of coarse." (Tr.I.1999-201, 216). Ms. White later identified Mr. Robinson, a white male whom she said she had never met or seen but of whom she had heard, in a photo lineup and in court (Tr.I.204-206). At trial, she provided photographic evidence of her own sleuthing to prove that although he was a white and had short hair at the time of the alleged event, Mr. Robinson had worn his hair in "black" hairstyles in the past (Tr.I.206-208, 219-220).

Ms. White described the man as wearing a "muscle type" sleeveless t-shirt, black shorts, and tennis shoes (Tr.I.199). Although Ms. White testified she observed the man at close distance for a considerable time, noticeably missing from her description of the man was any mention of tattoos (Tr.I.201, 216-217, 222-223). Mr. Robinson has multiple visible tattoos, particularly on his neck, arms, and hands (Tr.II.42-43).

The testimony at trial established that the same alley which ran behind Ms. White's west-facing home on Oak Avenue also ran behind the east-facing homes on Maple Avenue (Tr.I.226-227, 239-240; Tr.II.17). Mr. Robinson, his fiancé Darian Grayson, and their child lived with his parents, Tammy and Eddie Bridges, at 1125 Southwest Maple Avenue (Tr.II.15-16, 19). Mr. Robinson's grandmother Jean Sanders lived next door at 1127 Southwest Maple Avenue (Tr.II.9, 20-21). Both homes were directly east of the cemetery towards which Ms. White's intruder ran (Tr.II.17).

Just prior to Ms. White's house being broken into on June 27, 2013, there was a disturbance in Jean Sander's back yard. Ms. Sanders testified that sometime between 12:00p.m. and 12:30p.m., she heard something by the gate in her backyard (Tr.II.9-10, 18). She testified she hollered at her daughter next door and went to go investigate the racket, discovering a man in a white "wife beater" shirt and dark colored shorts trying to climb the back fence and break in the back gate (Tr.II.10-11). Ms. Sanders yelled at the man, threatening to call the police, and hollered for Mr. Robinson, who came over from next door and ran the man off. Ms. Sanders testified that she remembered specifically that this event happened on June 27, 2013, because that was the day that the central air conditioning went out at her daughter Tammy Bridges' house and Mr. Robinson and Mr. Bridges spent the day installing a window unit (Tr.II.14).

Mrs. Bridges testified that her family woke on the morning of June 27, 2013, to find their house hot and stuffy because the central air conditioner had broken (Tr.II.21-23). The family not having the funds to have the central unit repaired, Mr. Bridges testified

that he called-out from work at his job at Schlumberger and that he and Mr. Robinson spent the better part of the day installing a window unit, which ended up being a consuming project because they had to modify the window wall (Tr.II.24, 30-32, 40, 49). Mr. and Mrs. Bridges, Ms. Sanders, and Ms. Grayson testified that at no time that day did Mr. Robinson leave the house (Tr.II. 16, 21-23, 32, 34-35, 40, 45). They further testified that on that day Mr. Robinson was wearing blue shorts and no shirt (Tr.II. 14, 25, 36, 41-42).

## STANDARD OF REVIEW

The provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") govern this Court's independent review of Mr. Spruill's case. Under AEDPA, an application for writ of habeas corpus pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)

In Mr. Robinson's case, subparagraphs (1) and (2) are both implicated by the rulings of Curtis L. DeLapp, judge of the Washington County District Court, and the Oklahoma Court of Criminal Appeals' decision denying relief.

x

## SPECIFIC GROUNDS FOR RELIEF

**PROPOSITION I**
**Petitioner's conviction was obtained as a result of evidence that is insufficient to persuade a properly instructed, reasonable jury of his guilt beyond a reasonable doubt as guaranteed by Amendment 5 and 14 of the U.S. Constitution. See *Jackson v. Virginia*, 443 U.S. 307 (1979).**

## ARGUMENT AND AUTHORITY

The Due Process clause requires that the State prove beyond a reasonable doubt every fact necessary to constitute the crime with which the accused is charged. *U.S. Const. Amends.* V, XIV. The test for sufficiency of the evidence inquires whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In the case at hand, the evidence presented by the State was insufficient to sustain a conviction for burglary in the first degree.

Oklahoma Statutes title 21, § 1431 (2011) provides, "Every person who breaks into and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein...is guilty of burglary in the first degree." To this end as the jury in this case was instructed, "No person may be convicted of burglary in the first degree unless the State has proved beyond a reasonable doubt each element of the crime." The requisite elements are:

First, breaking;
Second, entering;

1

<u>Third</u>, a dwelling;
<u>Fourth</u>, of another;
<u>Fifth</u>, in which a human is present;
<u>Sixth</u>, with intent to commit some crime therein

In this case, the "some crime therein" that was intended to be committed was charged specifically to be "the crime of larceny". "Larceny is the taking of personal property accomplished by fraud or stealth, and with the intent to deprive another thereof." Okla. Stat. Tit. 21 § 1701 (2011). The elements of larceny are:

<u>First</u>, taking;
<u>Second</u>, carrying away;
<u>Third</u>, personal property;
<u>Fourth</u>, of another;
<u>Fifth</u>, of value;
<u>Sixth</u>, by fraud/stealth;
<u>Seventh</u>, with intent to deprive another permanently.
Although circumstantial evidence is given the same weight as direct evidence and the offense the defendant is charged with having the intent to commit when he broke and entered does not have to be shown to have been completed, sufficient evidence, nevertheless, must be presented to prove a defendant's intent beyond a reasonable doubt. *Rowland v. State,* 1991 OK CR 94, 7, 817 P.2d 263, 265-266.

In the light most reasonable to the State, the prosecution's evidence showed that Petitioner broke and entered the back door of a house in which someone was present. This in no way provides evidence that he did so with the intent to commit larceny. Nor was any additional evidence presented from which an intent, much less intent to commit larceny could be proven. "It is elementary, when a specific intent is required to make an act an offense, that the doing of the act does not raise the presumption that it was done with specific intent." *Boyd v. State,* 1977 OK CR 322, ¶ 9, 572 P.2d 276, 279.

2

Ms. Renee White testified that when she investigated the noise which sounded like someone trying to get in the back door of the house she shared with his parents, she discovered a man, identified as Petitioner, standing a couple of feet inside of the backdoor of the house which opened to the utility room. (Tr.I.196-199, 201) There was no testimony that the man was opening or looking in the cabinets in the utility room. Ms. White testified that nothing was taken from the home and that she did not see anything in his hands (Tr.I.209-210) In fact, the testimony was that he was doing nothing other than standing there (Tr.I.199-201).

PROSECUTOR: Okay, in that 20 seconds, what is he doing in that room?

MS. WHITE:     He's just staring at me and I'm staring at him.

(Tr.I.201)

When she continued to yell at the man to leave, he did. (Tr.I.200-201)

While it is not necessary that property be taken, there must be some evidence from which intent can be inferred beyond a reasonable doubt *Heinrich v. State,* 1971 OK CR 106, ¶ 9, 482 P.2d 629, 630-631 ("Evidence showed that a closet had been 'messed up' and that items in the kitchen had been handled"). *see also Matter of J.E.S.,* 1978 OK CR 111, ¶ 7, 585 P.2d 382, 384 (safe had been ripped out of the wall and laid on the floor with scratch marks evident around the safe doors and some desks and file drawers had been disturbed); *Salazar v. State,* 1976 OK CR 190, ¶ 10, 554 P.2d 26, 28 ("house had been ransacked in addition to the discovery of missing furnishings"). "[E]vidence that items have been disturbed in the course of the burglary, though not actually taken, supply

3

a sufficient inference of lawful intent." *Lopez v. State,* 1986 OK CR 63, ¶ 6, 718 P.2d 369, 372. Yet, no such evidence was presented in this case.

That the prosecution failed to present evidence sufficient to establish the charged intent with which Petitioner was alleged to have entered the White's house does not mean that the State's evidence failed to establish any offense. Where there is no intention, or no intention that can be proven, to commit a crime therein, Oklahoma Statute title 21 § 1438(B) (2011) makes it unlawful to "willfully and intentionally break and enter into any ... premise used as a dwelling without the permission of the owner or occupant thereof." The evidence presented by the prosecution, when examined in the light most favorable to the State, clearly proves this offense.

## RELIEF CAN BE GRANTED IN ACCORDANCE WITH 28 U.S. §2254(d)

1. The State court's decision was contrary to, or involved an unreasonable application of clearly established federal law in *Jackson v. Virginia*, 443 U.S. 307 (1979). The State court correctly identified *Jackson* as precedent law, but unreasonably applied it as there is no evidence of intent to commit any crime other than a misdemeanor.

2. The state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. The evidence, when viewed in the light most favorable to the State, proves only that the Petitioner willfully and intentionally broke and enter into a dwelling without the permission of the owner or occupant thereof, which is a misdemeanor. The OCCA no doubt took the argument of the State in its Appellee Brief (Pgs.4-7). Though the State concocted all manner of alleged

circumstantial evidence to support intent, the simple fact is that there was no evidence in which any intent to commit larceny could be proven "beyond a reasonable doubt".

### PROPOSITION II
**Error occurred when the judge departed from his role as a neutral jurist and assumed the duty of the prosecutor. This judicial bias contributed to Petitioner's conviction and violated the right to a fair trial and due process of law under Amendment 14 of the U.S. Constitution. See *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991).**

The U.S. Constitution guarantees a person charged with a crime a trial before an unbiased judge. *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991). The trial judge has the duty to see that both sides have a fair trial. However, the trial court abandoned this duty when the judge took on the role as counsel for the state, investigating defense witness and obtaining evidence with which to impeach the witness.

Preliminary hearing on this case was conducted on October 1, 2013, resulting in Mr. Robinson being bound over for trial. On October 17, 2013, Ms. Tammie Chidester prepared a written statement detailing her observations on June 27, 2013, the date of the alleged offense, and identifying someone other than Mr. Robinson as the perpetrator of the offense (Tr.II.61). This statement was provided to both the district attorney's office and counsel for Petitioner (Tr.II.51, 53-53, 61).

On December 26, 2013, counsel for Petitioner filed a "First Disclosure Discovery Notice to the State of Oklahoma and Defense of Alibi." (O.R. 18-19) This document gave notice of the defense's intention to call Ms. Chidester as a witness. Specifically, it was stated that her anticipated statement would be "that on June 27, 2013, approx. 12:30, pm

she observed an individual known to her as CHARLES FOUTS, run towards White Rose Cemetery and down the alley, wearing a white muscle shirt and black shorts." (O.R.18) On January 28, 2014, the second day of Petitioner's trial, Ms. Chidester was called as a witness for the defense (Tr.II.50).

On direct examination, Ms. Chidester testified that on June 27, 2013, she was sitting on her mother's front porch when she heard a loud noise (Tr.II.51-51). Chidester testified that she then saw someone in black shorts and a white tank top run down the alley towards White Rose Cemetery (Tr.II.52-53). Ms. Chidester testified that the cemetery could be seen from where she sat, that she was right across from it (Tr.II.53). Ms. Chidester testified that she knew "the dude that was running in the alley" but that she did not want to "mention his name"(Tr.II.54)

When defense counsel announced that he had no further questions for the witness, the district court called a ten minute recess (Tr.II.56). The jury was directed to remain in the jury room (Tr.II.56). Ms. Chidester was allowed to step down from the witness stand, reminded that she was under oath, and directed to remain seated in the courtroom (Tr.II.56).

The court and counsel, accompanied by the court reporter, retired to the judge's chambers wherein the following discussion, initiated by the trial judge was had (Tr.II.56)

JUDGE DELAPP: Show we're in chambers. The jury is not present and Ms. Chidester is in the middle of - - just finished direct examination. According to the records on the jail, Ms. Chidester was in the jail on June 27th, 2013, and posted bond that day, was not released until 1:35 p.m. What time did this crime occur?

6

PROSECUTOR:   12:50. It was reported at 12:50. That's what the witnesses say.

JUDGE DELAPP: So you want to go talk to Ms. Chidester and see if she wants to continue with her testimony or whether we need to address the fact that she's maybe committing perjury, Mr. Conatser?

DEF. COUNSEL: Well, I don't think - - I didn't - - I hope you're not holding me on this. All I had was a letter from her.

(Tr.II.56-57)

The record indicates that Judge Delapp then showed counsel a copy of the bond that had been posted for Ms. Chidester on June 27, 2013 (Tr.II.57)

JUDGE DELAPP: [H]ere's the bond that she did. Do you want to ask her if that's her? Her name is Tammie Lea Chidester.

DEF. COUNSEL: That's what I understand.

PROSECUTOR:   That's her, Judge.

JUDGE DELAPP: Go ask her if that's her and if she wants to continue with this testimony and we'll make a record on it. So go talk to her right now. Ask her if she was really there or still in jail at 12:50.

(Tr.II.57-58)

The Judge then examined Ms. Chidester on the record. Reminding her that she was still under oath, he questioned Ms. Chidester with regard to her statement of the events she observed on June 27, 2013, and whether she was "not in fact in jail at that time?" (Tr.II.58) After cursorily explaining the situation and the fact that she was subject to the penalty of perjury and could be charged with a felony, Ms. Chidester was given the opportunity to withdraw her statement (Tr.II.58-59)

JUDGE DELAPP: Okay. So you do not wish to withdraw your statement and you're going to continue to make the statement that you observed all this after 1:35 on June 27th?

7

WITNESS:        Yes, sir.

JUDGE DELAPP: All right. Let's have the jury come in. She can be cross-examined.
(Tr.II.59)

The recess was ended; the jury returned to the courtroom; and the prosecution began its cross-examination of Ms. Chidester (Tr.II.59) After some introductory questions, the prosecutor then examined Ms. Chidester with regard to the letter statement that she had sent to the prosecution and defense (Tr.II.61). The prosecution then asked to approach the bench and requested the bail document from Judge Delapp. The prosecutor then presented and cross-examined Ms. Chidester with State's Exhibit 7, which shows that bond was made and she was released at 1:35 pm.

While the impeachment of a witness is proper when born of the State's own investigative efforts, it was not proper for Judge Delapp to seek out such information and provide it to the State for its use. Judge Delapp knew that the defense intended to call Ms. Chidester; and rather than give information to the defense that their witness could possibly be impeached, he waited until the conclusion of the direct examination in order to ambush the defense. Judge Delapp purposefully did this to hurt the credibility of the defense by painting the defense to the jury as trying to concoct alibis by false testimony.

Judge Delapp has a long history of violating the U.S. Constitution and being biased against defendants in criminal cases. Chief Justice Douglas L. Combs demanded the removal of Judge Delapp by Petition in Case No. CJTD-2018 in the Court on the Judiciary of the State of OK, Trial Division on August 1, 2018. Included in the allegations by the OK Supreme Court Justice was that Jude Delapp committed "gross

8

neglect of duty" by violating cannons of "impartiality of the judiciary". He "ignored individual's due process rights", had a "complete disregard of applicable laws and fundamental rights", "denied access to justice", made misrepresentations to the OK Supreme court, falsified court documents, abused his position, used his status as s judge to assert power over citizens, and at least one attorney was concerned about "bias". Judge Delapp was ultimately removed from office.

After he was removed, complaints were still being made against he and other judges in that district. In fact, he was named as a Defendant in a U.S. Northern District Case No. 19-cv-234-GKF-FHM in which he and 2 other Judges were to be removed from office due to civil rights violations under 28 § 1983 (Though he had already been removed due to other litigation).

## RELIEF CAN BE GRANTED IN ACCORDANCE WITH 28 U.S. §2254(d)

1. The State court's decision was contrary to, or involved an unreasonable application of clearly established federal law in *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991). The impartiality of a judge in a trial is a structural defect in the trial mechanism. In *Arizona*, the Supreme Court stated that "The entire conduct of trial from beginning to end is obviously affected by presence on the bench of a judge who is not impartial"... "Without [this] basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair".

2. The state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. The evidence presented to

the court showed that the judge was biased and intentionally waited until after the defense direct examination in an attempt to ambush the Petitioner and harm him in the eyes of the jury. Had defense counsel had the information that was available to Judge Delapp, he undoubtedly would have not called Ms. Chidester to the stand and appear to be using false alibi testimony. At the time of the direct appeal, the state court presumed impartiality on the part of the judge and this should not have been blindly done as the judge's atrocious conduct in numerous cases has proven.

**PROPOSITION III**
**The trial court's failure to provide the jury instruction with regard to lesser-included offenses denied Petitioner his fundamental right to a fair trial under the U.S. Constitutional Amendment 14 and *Keeble v. U.S.*, 412 U.S. 205 (1973).**

Under Oklahoma law, the trial court has the responsibility to instruct the jury on all of the law applicable to the evidence presented, including all lesser-included offenses supported by the evidence at trial. Such instruction must be given whether or not it was requested. *Dixon v. State*, 545 P.2d 1262, 1264 (Okl.Cr.1976).

In the case at hand, the jury was only provided instruction with regard to the charged offense of burglary in the first degree. There is no doubt that initial responsibility for requesting instruction for applicable lesser-included offense fell on the shoulders of counsel for Petitioner. Yet, even in the face of the prosecutions admission that the sufficiency of its evidence with regard to the element of intent "the only real issue", Counsel made no request for any instruction to be added to that prepared by the trial court. (Tr.I.250; Tr.II67-73, 78). This did not, however, relieve the trial court of its

ultimate obligation. "Instructing the jury on the applicable law is solely the duty of the trial court." *Williams v. State*, 658 P.2d 499, 500 (Okl.Cr.1983)

Petitioner's jury should have been instructed with regard to the included offense of breaking and entering without permission, in violation of Oklahoma Statute 21 § 1438(B) (2011). The required elements of proof for breaking and entering without permission are:

First, Willfully;
Second, intentionally;
Third, breaking;
Fourth, entering;
Fifth, a premises used as a dwelling;
Sixth, without permission of its owner/occupant;
Seventh, without the intent to commit any crime in the premises used as a dwelling.
Instruction No. 5-17, OUJI-CR (2d); Okla. Stat. Tit. 21 §1438(B)(2011)

The elemental difference between burglary in the first degree and breaking and entering without permission is an absence of specific intent. Burglary in the first degree requires the breaking and entering be done "with intent to commit some crime therein." 21 §1431(2011). Breaking and entering without permission, on the other hand, is found where proof of such intent is lacking.

In this case, when viewed in the light most favorable to the State the evidence clearly would have permitted the jury to rationally find Petitioner guilty of the lesser offense of breaking and entering without permission and acquit him of the greater offense of burglary in the first degree. Instruction on the lesser offense should have been given but the jury was not given which option to consider.

The allowed length of sentence for these crimes is vast. Breaking and entering is a misdemeanor, where First Degree Burglary is punishable by imprisonment of 20 years.

Where there is such a great variance between the penalty for a charged offense and the penalty for a lesser-included offense is significant.

Recognizing the peril of such a situation, the U.S. Supreme court explained the importance and necessity of instructing upon lesser included offenses in *Keeble v. U.S.*, 412 U.S. 205, 212-213 (1973):

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction-in this context or any other-precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.

As the Supreme Court further opined in the *Keeble* decision, in such a case as that at hand, it cannot be known how a jury might have found if given other viable options. "But the jury was presented with only two options: convicting the defendant of [the offense charged] or acquitting him outright. We cannot say that the availability of a third option...could not have resulted in a different verdict".

The OCCA denied relief on this claim, stating that "Under Oklahoma Law, a defendant is not entitled to a jury instruction on any lesser-included offense when he defends a charge by asserting he is innocent of any crime".[1] The rule of law stated by the OCCA is analogous to the Alabama state statute struck down by the U.S. Supreme Court in *Beck v. Alabama*, 447 U.S. 625 (1980). The defendant in *Beck* was charged with the capital offense of "robbery or attempt thereof when the victim is intentionally killed by

---

[1] *Robinson v. State*, No.F-20140201 Summary Opinion (OCCA July 13, 2015)

the defendant." Id. At 627. Although Beck's own testimony established his participation in the robbery, the defendant proclaimed his innocence to the charged offense, denying that he killed the decedent or intended his death. Id, at 629-630. The evidence at Beck's trial would have supported a lesser-included instruction with regard to the non-capital offense of felony murder. However, under an Alabama statute in place at the time of trial, the judge was prohibited from giving, and the jury was prohibited from considering, any instruction with regard to a lesser included offense. Id, at 628, 630.

Noting that it previously had "invalidated procedural rules that tended to diminish the reliability of the sentencing determination", the Supreme Court found that "[t]he same reasoning must apply to rules that diminish the reliability of guilt determination." Id. 638. The Court held "Thus, if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is...prohibited from withdrawing that option from the jury..."Id.

The OCCA's rule of law with regard to a proffered defense of legal innocence to the charged offense bars instruction as to additional defenses and lesser-included offenses. See. *Grissom v. State*, 253 P.3d 969, 982 (Okl.Cr.2011) (Where the defendant makes admissions that render every defense unavailable save one, he is deemed to have elected, and may, by his election, foreclose the submission of instructions on other theories of defense or lesser-included offenses inconsistent with his defense). However, the U.S. Supreme Court has opined, "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a

reasonable jury to find in his favor. A parallel rule has been applied in the context of a lesser included offense instruction[.]" *Mathews v. U.S.*, 485 U.S. 58, 63 (1988).

### RELIEF CAN BE GRANTED IN ACCORDANCE WITH 28 U.S. §2254(d)

1. The State court's decision was contrary to, or involved an unreasonable application of clearly established federal law in *Keeble v. U.S.*, 412 U.S. 205, 212-213 (1973) and *Mathews v. U.S.*, 485 U.S. 58, 63 (1988). The state court's contrary decision diminished the reliability of guilt determination and denied him his entitled right to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.

2. The state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. The State court found that Petitioner was not entitled to relief because he "proclaimed his innocence" at trial. However, this finding is unreasonable as Petitioner never testified at trial. In all cases presented by the OCCA, each of the defendants in those cases testified and actually "proclaimed innocence". In this case, the Petitioner never made any proclamation of innocence and the court failed to give any alibi instruction as should be given when the defense of alibi is raised. Therefore, any finding of proclamation of innocence is an unreasonable determination of facts.

**PROPOSITION IV**

**Ineffective Assistance of Counsel denied Mr. Robinson due process and his right to a fundamentally fair trial in violation of the U.S. Constitutional Amendment 14 and *Strickland v. Washington*, 466 U.S. 668 (1984).**

The state court denied this claim based completely on the circumstances surrounding counsel's deficient performance in not investigating Tammy Chidester's jail records[2], largely ignoring the remainder of this claim. No finding of fact was made as to the deficiencies or prejudice as presented to the OCCA.

### I. General ineptitude

The bumbling nature of defense counsel's representation became evident as early as the State's presentation of its first witness, the prosecutrix Ms. White. During her brief cross-examination, counsel was twice admonished by the court for trying to impeach Ms. White with her prior testimony in an improper fashion.(Tr.I. 215, 217-218). Counsel was subsequently admonished during the examination of the State's second witness, the responding police officer, for attempting to have the officer read for the jury hearsay statements contained in his report. (Tr.I. 231-232). Counsel then attempted to cross-examine the officer with information contained in a police report prepared by someone else, and additionally attempted to question the officer, who was merely the officer who responded to the crime scene and took the initial offense report, about physical characteristics of the defendant at the time of his arrest. (Tr.I. 233-235)

Prior to trial, counsel filed a Motion in Limine seeking to bar any mention of Mr. Robinson's prior conviction and subsequent revocation in another matter. This motion

---

[2] *Robinson v. State*, No.F-20140201 Summary Opinion Pgs. 8-11 (OCCA July 13, 2015)

was discussed by the parties at the start of the proceedings in this case and granted by the court. (O.R. 27-28) (Tr.I. 4-6) It was agreed that unless Mr. Robinson testified, there would be no mention of his prior criminal record or prior suspended sentence revocation until the second stage. Nevertheless, in cross-examination the detective assigned to the case with regard to the photograph of Mr. Robinson used in the photo lineup, counsel invited such testimony when he pressed the detective, who had testified that he did not take the picture, with inquiries as to "Who took these pictures?" and "Where was that picture taken?" (Tr.I. 242-243) Exposure of the jury to the fact that the picture was taken when Mr. Robinson was previously incarcerated in the Washington County jail was avoided only by the frantic objection of the State and its request for the parties to approach the bench; whereupon a recess was taken, and defense counsel was admonished by the court. (Tr.I. 242-245) Unfortunately, such information concerning jail, half-way house, and prison, was ultimately placed before the jury by witnesses for the defense whom counsel clearly had not directed to avoid mention of Mr. Robinson's prior criminal history and incarceration. This deficient performance by counsel clearly prejudiced Mr. Robinson by allowing the jury to take information into deliberation concerning Petitioner's past criminal history when it was specifically ruled by the court that such information could be prejudicial; hence the sustaining of the Motion in Limine.

## II. Failure to object and investigate

Trial counsel failed to object to the trial court's investigation and participation in the impeachment of Tammie Chidester. Though the OCCA found that there was no prejudice as it believed that Chidester's testimony was not the only alibi testimony that

could have been falsified at trial, this is based on the OCCA's presumption of who the jury believed. It is quite possible that the jury would have been more likely to believe the other witnesses presented by the defense, had Ms. Chidester's clearly perjured testimony been kept out of the equation. Beyond Chidester's testimony, counsel should have investigated the testimony of the other witnesses in order to flesh out the inconsistencies between their testimony as well. Upon proper investigation, effective counsel would have decided not to call any witness that would make the jury believe the defense was being untruthful.

Defense counsel has a "duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary." *Strickland v. Washington*, 466 U.S. 668,690 (1984). "The relevant question is not whether council's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). "The Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *U.S. v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983).

Counsel had notice that Ms. Chidester had a pending prosecution at the time of Petitioner's alleged offense on June 27, 2013. Counsel had notice that she was likely incarcerated at the time of the alleged offense as well. In fact, trial counsel was appointed to represent Ms. Chidester while she was in custody. Counsel had knowledge that Chidester was in custody and a simple check of the docket sheet would have revealed that Chidester was in custody on the day of the alleged offense committed by Petitioner. It is unreasonable for counsel to have failed to investigate this.

### III. Failure to request instruction upon attempted defense

Counsel had the responsibility of ensuring that the instructions that were given to the jury were a correct, accurate statement of the law. "It is the duty of counsel, as an officer of the court, to aid the court in avoiding error in the trial of cases by insisting on the giving of proper instructions." *Hall v. State*, 316 P.2d 620, 621 (Okl.Cr.1957).

Appellant was prejudiced by his counsel's failure to request instruction upon the defense of alibi. Over a month before trial, counsel filed a "First Disclosure Discovery Notice to the State of Oklahoma and Defense of Alibi." (O.R. 18-19) This document gave a rough summary of the witnesses the defense intended to call to testify about their observances on June 27, 2013, and the whereabouts of Mr. Robinson at the time of the alleged offense. Save for Mr. Robinson who did not testify and Ms. Chidester, whose credibility was called into serious question, these witnesses testified consistent with the disclosure filed on December 26, 2013. At trial, Jean Sanders, Tammy Bridges, Eddie Bridges, and Darian Grayson all testified that Mr. Robinson was at home the entire day of June 27, 2013, never leaving, and that he was helping install a window air conditioner at the time Ms. White's home was broken into. (Tr.II. 14, 16, 21-25, 30-32, 34-36, 40, 42, 45, 49)

Yet, despite counsel's previous notice regarding an alibi defense and the testimony of the witnesses he presented, counsel made no request to the court that the jury be instructed with regard to the defense of alibi (Tr.II. 67-73). Because *prima facie* evidence of an alibi defense had been presented through witness testimony, counsel had a duty to request instruction upon the defense of alibi. The failure to request an instruction on a

defense can constitute ineffective assistance of counsel. See *Capps v. Sullivan*, 921 F.2d 260, 262-263 (10th Cir. 1990)

### IV. Failure to request lesser included instruction

While counsel attempted to mount an alibi defense, this defense was greatly weakened by the lack of credibility and through impeachment of Tammie Chidester, who was the last witness the jury heard from. There can be little doubt that her testimony impacted the weight given to the other defense witnesses. Moreover, even if these witnesses were given more credibility, the mere proximity of Mr. Robinson's home to Ms. White's house did not render his involvement an impossibility.

The State's evidence with regard to the element of intent was deficient. As such, reasonable counsel would have made a request for the jury to be instructed with regard to the lesser included offense of breaking and entering without permission. While the ultimate responsibility to thoroughly and properly instruct the jury on all the salient features of the law raised by the evidence is that of the court. However, counsel for Petitioner too had a duty to ensure that the jury was properly instructed. See *U.S. v. Zimmerman*, 943 F.2d 1204, 1214 (10th. Cir. 1991) (jury must be instructed so as to preclude possibility conviction rests on incorrect legal basis).

Viewed in the light most favorable to the State, the evidence presented by the prosecution tended to prove that Appellant had acted in an inappropriate and likely unlawful manner. Yet the evidence, as reflected by the near minimum sentence Petitioner received despite his four prior convictions, left doubt as to what offense had been perpetrated. Indeed, despite the State's complaining witness clearly identifying Petitioner

as the man who broke into her house, the jury deliberated for nearly an hour with regard to Petitioner's guilt. (Tr.II.98)

Because they provided no instruction with regard to a possible lesser included offense, the only options for the jury to consider during that hour where whether to convict Petitioner of the charged offense or let him go free when it was clear he had acted improperly. Though, in theory, a defendant should be acquitted if the prosecution has not presented sufficient evidence to prove every element of the charged offense beyond a reasonable doubt, it has also been clearly recognized that in such situations, without the provision of a viable lesser-included option, a jury will likely resolve any doubts in favor of conviction. *Beck v. Alabama*, 447 U.S. 625, 633-634 (1980). In *Keeble v. U.S.*, 412 U.S. 205, 212-213 (1973), it was stated that "a defendant is entitled to a lesser offense instruction-in this context or any other-precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory".

In the case at hand, the extent of the "substantial risk" noted in *Keeble* is quite striking. The possible punishment for burglary in the first degree as Petitioner's jury was instructed was imprisonment for a term of twenty years to life, with the required service of eighty-five percent of any term imposed prior to Petitioner becoming eligible for parole. (O.R. 59); 21 O.S. §13.1; 51.1(B); 1436 (2011). The possible punishment range for breaking and entering without permission "imprisonment in the county jail not exceeding one year or a fine not exceeding five hundred dollars, or both such fine and imprisonment." 21 O.S. §1438(B) (2011).

Counsel for Mr. Robinson made no effort to counter the substantial risk to his client. An "objective standard of reasonableness" certainly requires counsel to request all jury instructions that could be beneficial to the defendant. See *Strickland*, supra at 686, 691-692. Failure to do so cannot be sound trial strategy and is not harmless, because it pertains to the central purposes of a criminal trial - the finding of innocence or guilt and the determination of sentencing - and thus renders the results of the trial unreliable.

## RELIEF CAN BE GRANTED IN ACCORDANCE WITH 28 U.S. §2254(d)

1. The State court's decision was contrary to, or involved an unreasonable application of clearly established federal law in *Strickland v. Washington*, 466 U.S. 668 (1984). The state court unreasonably applied the prejudice prong of *Strickland*. Had counsel acted reasonably, the jury would not have heard information regarding Petitioner's prior convictions, would not have heard conflicting testimony concerning the defense of alibi, would not have heard Chidester's impeachment, and would have gotten an instruction for either alibi or lesser-included offense. Any finding to the contrary could only be had through an unreasonable application of *Strickland*.

### PROPOSITION V
**Petitioner's appellate counsel failed to argue meritorious claims during the Direct Appeal, thus violating Petitioner's right to effective assistance of counsel as guaranteed by Amendments 6 and 14 of the U.S. Constitution. See *Smith v. Robbins*, 528, U.S. 259 (2000).**

The Petitioner did not knowingly, voluntarily, or intelligently waive any claims presented under IAAC below. Appellate counsel should have raised these issues and had she done so it is likely that the result of the direct appeal would have been different.

21

Being such, it was deficient performance of counsel to have not raised these issues. In order to ascertain whether or not counsel was deficient, only a look at the merits of each underlying claim can reveal this.

In *Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2005), the court stated:

"The very focus of a Strickland inquiry regarding performance of appellate counsel is upon the merits of omitted issues, **and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."** (emphasis added)

Sub-Proposition I. Ineffective Assistance of Trial Counsel

A. The only witness to the alleged crime, Ms. White, identified Petitioner in a police photo lineup on July 17, 2013. On this date, she circled the photo of Petitioner. This circled photo was used in trial as evidence of identification. However, there this seemingly simple identification was the result of tampering with this witness by the state of Oklahoma (explained on Pg. 23-25). Trial counsel failed to object to the identification of Petitioner by Ms. White in regard to the out of court photo lineup. Though the circumstances create a severe likelihood of irreparable harm, counsel neither objected to the use of the photo lineup nor sought a cure after it had been presented. Reasonable counsel would identify the unreliability of this identification and the Supreme Court's decision regarding this issue in *Simmons* (explained in full on Pg. 24-25)

B. Trial counsel failed to object to Detective Mellen's presence in the courtroom during the testimony given by Ms. White prior to his own testimony. This allowed him to heat that the defense had placed significance on the fact that Ms. White was shown a lineup with names under each photo (Ms. White heard rumors that a Keith Robinson had

22

robbed her home) prior to being shown the lineup without names in which she circled Mr. Robinson's photo. Detective Mellen testified directly after Ms. White and testified that he never showed Ms. White the photo lineup containing the names. Had counsel been able to blindside the detective with this question, it is likely that he would have testified to the truth as Ms. White did, not knowing the purpose of the question.

Any reasonable counsel would have requested that the State's witnesses be removed from the courtroom during testimony of the State's witnesses concerning the officer's actions. This is common practice that is followed by all attorneys in every case. This conduct is clearly deficient. Petitioner was prejudiced by this because the truth would have shown that the witness was tampered with in regards to the photo lineup.

Sub-Proposition II. <u>Witness Testimony Tampering/Prosecutorial Misconduct</u>

The only witness to the alleged crime, Ms. White, identified Petitioner in a police photo lineup on July 17, 2013. On this date, she circled the photo of Petitioner. This circled photo was used in trial as evidence of identification. However, there this seemingly simple identification was the result of tampering with this witness by the state of Oklahoma. Ms. White testified at preliminary hearing that her home had been burglarized in the past and that she had heard rumors that "Keith Robinson" was the perpetrator. She also testified that she had no idea that Mr. Robinson looked like when she had heard the rumors. Ms. White testified at preliminary that she screamed at the perpetrator and that he "took off". Then at trial, she testified that the perpetrator stared her down for about 20 seconds before running off. Further, she filed a police report in which she stated that she saw a man that was half white and half black which is not descriptive

of Petitioner. The State was aware of this then the investigation was done on July 17, 2013. So, to ensure that Mr. Robinson would be convicted, investigators took two sets of pictures to the witnesses home. One had names under each individual's photo; the other had no names. Investigators showed Ms. White the photo with names under them to allow her to see which one was "Keith Robinson". Only after this had been done was she then shown the photos with no names and instructed to circle the Petitioner. The D.A.;s investigator knew that this was improper and attempted to cover this fact up when he perjured himself on the stand by testifying that he never showed Ms. White the lineup with names on it. However, Ms. White testified that the investigator did, in fact, show her this line-up.

When this testimony is viewed in light of the original identification of the perpetrator by Ms. White that a half black male, medium complexion had robbed her (Mr. Robinson is 100% Caucasian and has no appearance of medium complexion or black), the reliability of the identification is seriously diminished.

This type of case is exactly what the U.S. Supreme Court opined on in *Simmons v. U.S.*, 390 U.S. 377, 385 (1968). The following are relevant facts that seriously increase the likelihood of irreparable harm according to the Supreme Court:

1. It was not necessary for the police to show a photo-lineup of the Petitioner because they had been given his name by the witness and he was already in custody.

2. The witness was shown the photograph 20 days after the alleged crime.

3. The witness was shown photographs that did not resemble her description of the perpetrator.

4. The witness was shown photographs of the Petitioner which had his name under the photograph.

5. The confrontation between the Petitioner and the witness was 7 months after the alleged crime.

Although the witness identified Petitioner during trial, even that was done unfairly. Instead of having the witness identify the Petitioner at the start of her testimony, the State waited until Mr. Robinson was asked to get up and move to a location the court room where he could see the projection screen. While Robinson was walking across the room, the prosecution made the motion to the court to allow the witness to identify the Petitioner at that time.

There exists a myriad of circumstances that create a substantial likelihood that this lineup led to irreparable misidentification of the Petitioner by Ms. White. The State was complicit in creating these circumstances and is the cause of this irreparable harm.

## RELIEF CAN BE GRANTED IN ACCORDANCE WITH 28 U.S. §2254(d)

1. The State court's decision was contrary to, or involved an unreasonable application of clearly established federal law in *Smith v. Robbins*, 528, U.S. 259 (2000). The State court did not recognize Smith v. Robbins or that the merits of the underlying claim had to be analyzed. The trial court stated that "Petitioner has not demonstrated that his counsel's performance was deficient and that the deficient performance prejudiced him. However, there is no way this decision could have been properly made because no merits had been presented to the trial court at this time. Petitioner filed an application for post-conviction relief but did not file a brief in support with facts and legal assertions.

Instead, he filed a motion for transcripts and asked the court to not make any decision on the post-conviction application itself until the motion for transcripts was adjudicated and Petitioner was allowed to file his brief in support. After multiple attempts for adjudication and waiting 447 days for a decision on the Motion for Transcripts, Petitioner filed for a Writ of Mandamus on the Motion For Transcripts at Public Expense[3]. Judge Delapp, in his apparent irritation at Petitioner for filing for Mandamus, denied both the Motion for Transcript and Post-conviction Application within 48 hours of learning that the Mandamus had been filed. He did not allow Petitioner to file a brief in support or make any arguments to the merits of his claims.

2.  The state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. The State court made absolutely no finding of facts as the Petitioner never afforded a chance to present the facts to the court and therefore the fact finding process itself was deficient in this case.

## CONCLUSION AND ASKING

Petitioner Robinson requests of this Honorable Court to conduct a review of the facts and law under 28 U.S. 2254 (d). Robinson asks that a Writ of Habeas Corpus be issued to demand his immediate release from state custody.

Respectfully submitted this 30th day of January, 2019

Keith Earl Robinson
LCC
P.O. Box 260
Lexington, OK. 73051

---

[3] *Robinson v. Delapp*, Case No. MA-2016-1074 Filed in the OCCA November 23, 2016

## VERIFICATION AND CERTIFICATE OF SERVICE

I declare under penalty of perjury that the foregoing is true and correct and that this

Supporting Brief of Petition for Writ of Habeas Corpus was placed in the prison mailing

system on this 30th day of January, 2020 to the following addresses:

Attorney General for the State of Oklahoma
313 NE 21st St.
OKC, OK. 73105

_Keith Robinson_
Keith Earl Robinson
LCC
P.O. Box 260
Lexington, OK. 73051

27